Our second case for this morning is Sabrina Roppo v. Travelers Commercial Insurance. I'll give you a minute to get yourself organized. Mr. Simpson. Good morning. So there's a lot to cover here because obviously there's a jurisdiction issue as well as the underlying facts. But I just want to start off by telling you this. The Illinois Supreme Court in 1996 passed legislation that allowed them to come up with interrogatories that would be issued in all car accident cases. And finally in 2002 they decided to issue interrogatories to be propounded upon the defendant. Interrogatory number six required the defendant to disclose excess or umbrella policies. And that has been the law of the state ever since then. So let me on that note begin maybe not at the beginning, but honestly by the time I finished reading all of the briefs in this case, it struck me as perhaps a very interesting debate about the content of Illinois law about discovery. But it is a mystery to me why that is of any pertinence to a federal court. Once you're in federal court with the case removed under CAFA, if you'll concede for the sake of argument right now that the case is in federal court, it's a federal court matter to govern the scope of discovery, to govern enforcement of discovery orders. And so I'm really having trouble seeing the relevance of it. And I would be more than happy to talk about CAFA too as well as some other concerns. But maybe you could explain to me why we care about this Illinois rule. Well, because it's a violation of that rule that is the substance of what the defined class is. The class is defined as people who were lied to about whether there was excess or umbrella policy. Right. And this class was never certified in the state court, right? Never got that far. It was an asserted class. And my second perhaps irrelevant thought about this case is that with cases like Walmart against Dukes in my mind somewhere, it seems to me this would be an uphill slog to certify this class in federal court. Well, let's say a few things about that. Because, first of all, you have a class representative who is not typical of the class. She found out about the umbrella policy. She got the benefit of that. Good for her. You know, she had a good lawyer. That's great. But I don't know whether the Supreme Court of the United States under things like the general telephone case would say that she's typical of the class. Secondly, I don't know why everybody's injury is the same. Some people might have had damages for a $500,000 policy that are worth $200,000. They're completely unaffected by whether an umbrella policy exists or is disclosed. Other people may be in her position. Why is there commonality? Well, here's what I'd say about it. First of all, we don't know much about any of these members of the class. And whether or not Walmart would preclude this is, I think, an open question, particularly because there's a lot of litigation in the United States Supreme Court on that issue regularly. And I know there's even been recent cases from the Seventh Circuit that have narrowed Walmart's application. So I don't think that's clear. But more importantly, we're not even to that point right now. And I think it's pretty clear that even in the Seventh Circuit that damages don't have to be identical in order for class certification. But look at it from this perspective. We got past jurisdiction, at least allegedly. The judge accepted their removal petition. But we didn't get past the motion to dismiss in this case. And so we've never done discovery. And without any discovery in this case, I don't think we can even begin to know the answer to that question. I mean, the reality of it is because this fraud is so hidden, there's only three people or three entities in the world that would know of the existence of these excess umbrella policies. I understand that point. Let me come to CAFA right now, though, because I don't want to get too distracted. CAFA, and I'm looking at 1332d-1, defines the term class action in terms of the way that civil action was filed. It doesn't look at certification or anything else. And it includes filed under a similar state statute or rule of judicial procedure as Rule 23. Well, this case was filed in the state courts asserting that there were 500 members of the class and asserting damages. And so it's removed under CAFA. And I guess the question before us is, you know, how deeply into the weeds do we need to go, as a matter of fact, for the initial jurisdictional allocation? We don't like situations where jurisdiction requires, you know, years of discovery. And it seems to me this clearly was filed as a class action. You thought it was 500 people. They point out, you know, if there's even a $10,000 shift because of the umbrella policy disclosures, you hit 5 million. Why isn't that enough to get the case to federal court? Because they didn't meet their burden in multiple ways. The first way they didn't meet it is we said in our complaint, we're just coming up with a wild guess that there's 500 class members. And the law says under Bloomberg, which is a Seventh Circuit case, that there has to be evidence. And there was no evidence. So you have to be telling the federal court, we said it was 500 people, but don't listen to a word we say. You know, let's do something else. Yeah, but in fairness to us, not only did we say it was 500, but we also said in the complaint, we're completely guessing. We have no idea. So it's not like we just came up with this when we decided to challenge jurisdiction. We said in the complaint, and we originally pled, that we have no idea how big this case is. Also, the FedEx ground case, which we cite, in that case, what did the plaintiffs say? They said, well, the class is 200. That's our guess. And they said, we believe it's 200. And what did the district court do? It found no jurisdiction because they said it's up to the defendant to come up with real evidence, and that's not real evidence. As to the claim that the- Who's in the class, though? Is it people who have an umbrella policy, or is it people who are affected somehow by the disclosure of that policy? Right. It's for people that because their case changed because they didn't know the existence of the policy. Why doesn't that fall into the trap of classes that are defined by result, not by some characteristic? Well, because when you negotiate a settlement, you might take something a little less than the policy if you think that that's what the policy is. It changes fundamentally the nature of the discussions. If you're arguing about whether or not you should get $500,000 or $1.5 million- No, I don't get that. It just changes, and they don't get to make that decision. Travelers does not get to make the decision for the Plaintiffs' Council to limit their arguments by defining the terms differently than the facts really are. But why are the federal courts the right place? This gets me back to my other thing. I think the 500, you know, you said it was 500 people. You suggested that, you know, out of the entire state of Illinois for 25 years, it doesn't seem impossible it would be 500 people. Then you have the legal certainty test in terms of the amount of controversy. So once you get to federal court, the federal court is going to resolve the case under federal procedural rules. But you're asking the federal court to decide whether a state law has been violated. No, well, first I'm asking the federal court to say they don't have jurisdiction because the defendants haven't met their burden. I get that. But suppose we disagree. Then the substance of your case, I know you don't want to be in federal court, but the substance of your case is that you think these state disclosure laws are not being followed. Well, yes, correct. Right. So why are the federal courts the right place to help the Illinois courts enforce their own disclosure rules? Exactly. Why it should go back to state court. This jurisdiction is in state court and it should be under the local controversy rule and under the home rule, the discretionary rule. You just made the point that we made about why this case should go back. Look at the local controversy rule. Look at the discretionary exception rule. All of those factors add up to the fact that this needs to be back in state court. Every statute that's cited, every Supreme Court rule that's cited, they're all Illinois state law statutes and Illinois state law rules. But, of course, you just probably sat here and listened to us hear two insurance cases dealing with nothing but state law. That's what diversity jurisdiction gives us. Well, I understand that. So my answer on the other side is like it or love it. But in the other case that you heard, respectfully, you didn't have CAFCA. You didn't have the discretionary exception and the home rule exception. So this requires a different level of analysis. You need to look at those exceptions because, specifically, the federal government has said that under certain situations when really this is just about what's going on in state court, we need to send this case back so state court can deal with it. And, Your Honor, I know you said that assume we get past the jurisdiction thing. But I just want to strongly make the point that they have claimed that there is $5 million or $500 million worth of fraud that they committed, and that's the amount in controversy. And they've done that only by an affidavit that established policy limits. And I will tell you this, that if I got into a car accident and it was my fault and I had a million dollars worth of coverage and you asked me, based on that, what's the injuries of the person I hit, okay, you would have no idea. Yet they're telling you that you can infer just from those facts that there's at least $10,000 worth of damage to the person that I hit. And I would say to you also, they're saying it's over $5 million. Suprena Roppo, at best, doesn't have anything close to $10,000 worth of damages. And yet somehow they're claiming that she, as part of this class, adds up to over $5 million. And the reality of it is the records that show how much fraud is going on here are exclusively held by the only three people that have them, the person that paid the premium, the defendant, okay, the insurance company, okay, who doesn't want to pay a claim even though they collected the premium. And their lawyer, who the insurance company hired to protect the insurance company's interest and maybe tangentially their insurance interest. That's it. And as Justice King said in the California dredging case in the dissent, he said, wouldn't it be a tragedy if a paraplegic had to live their life, the rest of their life, without a million dollars worth of excess coverage because they never had any way to find out about it. That's wrong and there's got to be a remedy for that. And we think that this class is the only way that all these people that have been deprived of the knowledge that they will go to their grave otherwise without success in this case, knowing that there was a million dollars worth of coverage that travelers hid from them. And apparently travelers sort of agrees because they think there's at least $500 million in controversy. And the only- Five. I think they said it could go up to 500. Correct. Five. Right. But they came up with the number of $500 million. And they said, and the only way you get there is because they've looked through their files and their files tell them what? That they regularly hide the existence of umbrella policies. And my client caught it and my client caught it because even though, as Justice Mitva said, that's what lawyers do. They rely on interrogatory answers. I kept asking the question. And that's what good lawyers do. They litigate their case on the interrogatory answers that they have. And I had every right to rely on their false answers in this case. And I did rely on them. All the decisions I made were based upon those false answers. And that's how I litigated this case. And then I find out after the fact that those answers were not, in fact, true because I keep asking questions. Me, my client, should not be penalized for that fact. And even Justice Chang acknowledged that my client would have gotten a settlement six months earlier, okay, of $250,000 over the disclosed limit had they come forward and had they disclosed this policy earlier. And they had every chance here to disclose the policy. They send me letters that says it's only $500,000. On the phone they tell me it's only $500,000. And you were asking them each of these times not just for the automobile liability policy but for umbrella or excess coverage or others? Absolutely. Absolutely. And I would say this, too. Think about it just from a practical perspective. Does any lawyer that's trying to represent a plaintiff really care where one policy starts and the next one ends? When you say policy limits, okay, what are you talking about? You're talking about the most amount of money your client can get under the insurance that's available. And it's not like Travelers wrote one of these policies and GEICO wrote the other one. And it's not like there were one adjuster for the umbrella and a different adjuster for the underlying automobile policy. There was one adjuster with one company here, and they misled us by not telling us about that. Mr. Stinson? Yes. Is there any authority in the State of Illinois that this statute creates a private right of action? Well, it's not been decided. It hasn't been decided. What is there in this statute? Illinois jurisprudence would make us think that a right of action, in fact, was created here. Okay, so let me suggest a few things. One is because this is so well hidden, okay, the Department of Insurance has been completely ineffectual as far as rooting out any violations of this. And, frankly, no one's going to root this out if this case is not successful. These cases, people, there is no incentive under the law right now to get insurance companies to disclose umbrellas. Right now, they can cheat, they can lie, they can misrepresent about the existence of an umbrella, and there are no repercussions. And this case happens to want to go back in time and give people a chance today. You might well be subject to judicial sanctions for not disclosing it. Right. But the reality of it is when your case is over, you're the quadriplegic that Justice King talks about that lived the rest of your life without knowing, and the three people that knew, the lawyer on the other side, the insurance company, and the insured, aren't going to, like, come knocking on your door and say, hey, 10 years ago we lied about the fact there was no umbrella policy. That's not going to happen. Mr. Stenson, do most states have a statute like Illinois that requires disclosure of coverage? My experience has been that merit case I would direct your attention to, it's the most factually similar case. I would note the fact I've cited it a million times, the defense in this case, it's merit versus state farm. It was an 18-year-old girl down in Georgia. Georgia law requires the disclosure of an umbrella policy. They didn't disclose it. But you have no idea whether this statute of Illinois is typical or atypical of what happens in the insurance industry in the United States, do you? I don't know specifically whether there's other statutes that are on point other than Georgia. Do you know of any other state that creates a cause of action in a particular party to enforce such a statute? Well, I think the merit case recognized that there was a cause of action in Georgia. So I guess my answer to that would be, I would say this, I don't think it's only become recent that the lawyers that practice in this area of the law became aware of how widespread this fraud was. Because the problem is you litigate your case, you get your client what you think under the underlying policy, and you settle the case and they sign a release or they get a judgment, and you never learn about it. And so the reality of it is this fraud is not only on the judicial system, it's on the lawyers, it's on the clients. There's just no way to unearth this thing. I mean, frankly, I still wouldn't know if I hadn't kept talking to the lawyer and he at one point admits to me, all right, well, yeah, I guess I did find one. I mean, otherwise I would still not know. Going back to your question, because I didn't mean to skip it, on whether there's a private cause of action though, I mean, the question is does the statute, does the plaintiff need the statute to remedy the harm? Absolutely in this case. And, again, it goes back to our point, there's four different criteria, each one of them we've met. I don't think there's much dispute the fact that if there was a private cause of action it would give some remedy here. That settlement statute, I would point out, is obviously for the purpose of trying to settle a case. And who in their right mind would settle a case or try to settle a case without knowing all the available coverage? It would be malpractice for me to say to the other side, well, I'm going to try to settle your case, but I don't know whether the other side has an umbrella. Mr. Stinson, is there any other litigation pending in any other court? There is. Related to this case. Well, there is in the sense that I filed two other lawsuits in state court right now. One against State Farm. That case got passed the motion to dismiss. We are now before Judge Atkins on discovery against State Farm. The other one is the Judge Mitva case. She's since been elevated to the appellate court. She dismissed the complaint, not on, obviously, jurisdiction, but just failing the state of cause of action. She, however, was critical of Judge Chang's conclusion that there wasn't reliance in this case. And I've appealed that to the First District Appellate Court. It's just recently fully briefed, and I expect that that will go to oral argument soon. I don't know exactly what their time frame is on that. And what was the basis for Judge Mitva's dismissal? Well, in Judge Mitva's opinion, I don't want to speak for her too much, but what she said was she absolutely thought that there was reliance. She was concerned about damages in that case. And the reason she was concerned about it was because the time frame between when the lie was told in the interrogatory answer, and she described it as a lie, and the time frame in which it was revealed was only 3 weeks, which was not the 6 months that was in this case. She thought that even though class actions can be based on a $1 loss, that there had to be a certain quantitative amount before you got to damages. So that's probably the main issue that I appeal on. But that was the main basis for her thing. Essentially, she threw it out on damages. And Justice Chang reached a different conclusion on that point. All right. If you want to save your last minute for rebuttal, we'll let you do that. I have 5 minutes left, then, to... Actually, no, you've been using it up. But we'll see. All right. Sorry. Thank you. No problem. Mr. Hanover. Good morning. I wanted to start with a jurisdictional issue, the federal question jurisdiction. The operative complaint at the time that judgment was entered was the third amended complaint, which had 11 counts. One of the counts was for RICO. And RICO gives rise to federal question jurisdiction. Despite the fact that the whole complaint was dismissed with prejudice, that does not negate the jurisdiction provided by RICO. So the question is whether this was a RICO allegation that passed what I like to call the Bell v. Hood standard. Is there at least enough merit in it to engage the jurisdiction of the federal court? Or was it just so patently inadequate as an allegation that Bell v. Hood has been cited in Steel Company against Citizens for a Better Environment and many other cases, a well-established Supreme Court principle? Because it looks awfully weak to me as a RICO claim. So I'm just trying to figure out how bad is it. It is weak. The standard, however, is that the count has to be clearly wholly insubstantial and frivolous. And that's what I'm asking you. Right. So Travelers moved to dismiss all 11 counts. First of all, Plaintiffs' Counsel clearly thought that it satisfied the requirements of Rule 11. That is neither here nor there. This is something we have to decide. Yes. Travelers moved to dismiss all the counts. And with respect to RICO, Travelers alleged that the Plaintiff lacked standing because she didn't allege a clear injury to business or property. And why does she have standing? She was paid. She got her an amount in settlement that reflected the umbrella policy. How does she have standing as an aggrieved party? Well, we don't think that she does. Right. If she doesn't have standing, then why does the whole thing fall apart? Well, Judge Chang found that he didn't need to reach the question of whether there was actually damage here, but he offered his views on it in the event that it would be helpful to the parties. But that doesn't answer it. Damages is a different question from standing. You have to be a person with an actual injury. Obviously, you know, the rest of the litany, you know, an actual injury, in fact, caused by the violation is redressable. And there's a serious question whether the named Plaintiff, Ms. Roppo, has at this moment or at the time of removal injury in fact. What's her injury in fact? Well, there's been many cases that have been dismissed for lack of any injury in fact, but it did not mean that there was no jurisdiction to consider it. It does mean there's no jurisdiction. If there's no Article III standing, the Supreme Court regards that as a jurisdictional flaw, you know, which one tests under Rule 12b-1. It's Plaintiff's counsel's view and Judge Chang's view that during the six months when the existence of the umbrella policy limits was not disclosed, that there's a time value of money element that gave rise to damage, that the Plaintiff would have had her judgment six months earlier, and that has a monetary value to her. And I'm not sure I buy that. I mean, I like Judge Chang. He's a fine judge. But, you know, we're here to review this case, and I don't know if the settlement had been six months earlier, whether it would have been a few dollars less. You know, maybe it was more six months later to account for the time value of the lapse in time between the actual initial injury and the time the check was written. So it seems to me highly speculative. I mean, we all understand time value of money. We deal with it all the time. But in this context, it's a little bit hard to use. And so I'm uncomfortable with RICO as a hook for this. So maybe we could talk about CAFA for a minute, because my issue with that is just to remind you, I'm sure you know this, that pleading requirements in state court are quite different from pleading requirements in federal court. In state court, maybe you can say there are 500 members of the class and you don't have to put money down. But as soon as you, the party who wanted to be in federal court, remove asserting that CAFA is required, the burden is on you to show that CAFA is satisfied. So how do you meet that burden without evidence? Jurisdictional evidence is common. How can you do that without evidence? Well, as an initial matter, requiring CAFA is a pleading issue. And we relied on the allegations of the complaint that estimated 500 members of the class. But you know what? It's not really pleading. I'm going to quibble with you here. Let's suppose we had a really simple case, a first-year civil procedure class case, where a complaint in state court says A is a citizen of Illinois, B is a citizen of Texas, it's filed in Illinois court, so we're going to remove to the federal court in Illinois based on diversity. And after the case is removed, A, who doesn't want to be in federal court, says, you know, I don't think that B is a citizen of Texas. There's evidence that B is also a citizen of Illinois, and there's no diversity. The court would find facts on that. The court would have to explore, you know, where's B? Let's assume B is an individual. Where does B vote? Where does B have a house? Where does B do things? And so there's jurisdictional facts, and the same thing. It's under the same statute. It's 1332D. The same thing I would imagine is true of CAFA, where you remove, you assert, of course, that these things are there, but if you're challenged, why don't you have to back it up? Well, because the facts that are pleaded in the complaint have consequences, whether you're in state court or federal court, and it meant something. So in my example, you would say there's no jurisdictional discovery as to whether there's true diversity between A, allegedly of Illinois, and B, allegedly of Texas. I think that true diversity is a different. Really? Why? Because this is not a situation where there is conduct at issue and the court needs to adjudicate whether the conduct is proper or improper. I don't understand that at all. I mean, there are criteria in 1332A for regular diversity jurisdiction, including citizenship in different states, never mind alienage, and the amount in controversy. There are similar criteria, they're not identical, in CAFA Part D of 1332, the number of people, minimal diversity, and an amount in controversy. I don't understand why, if they're challenged, you don't have the same kind of evidentiary obligation that you would have if it's a 1332A challenge. Well, there's abundant cases where plaintiffs either don't make any allegation in a complaint on a jurisdictional fact, like, for example, the amount in controversy here. The plaintiff has alleged that there's a very substantial amount in controversy. And under those circumstances, there's more of an onus upon the removing defendant to actually provide affirmative evidence that the amount in controversy is satisfied. But the law is that where the complaint pleads a jurisdictional fact, which is here, standard fire versus nulls, for example, that the U.S. Supreme Court decided, the defendant is permitted to rely on the allegations of the complaint. Let's talk about those allegations of the complaint, though. What were the allegations of the complaint by which the plaintiffs alleged that they were, in fact, harmed, that they would have gotten a better settlement, had they known, of the umbrella policy? What facts did they allege? They allege that they would have taken a different litigation strategy. Did they say anything about the litigation strategy? No. Not at all. They said that it affects their litigation strategy, and they were damaged because they would have done... Well, they don't even say that. They say it would affect their litigation strategy. With no further explanation. With respect to... In terms of specifics. Right. This is not a case where a plaintiff actually settled for automobile policy limits and then later discovered that there was an umbrella policy. This is a case where, from the time that travelers answered the interrogatory issue here to the time that the Plaintiff's Counsel found out that the answer wasn't right, was about two and a half months. But where does the $5 million come from? That's not in the Plaintiff's Complaint in state court. Correct. That's not. You made it up, so why doesn't it fit exactly within the rule that you just cited to us? Well, that's where I was getting that there's... What we have before the court is a single incident. And the Plaintiff's Allegation is, this happens all the time. I understand that your job, though, as the removing party, is to show that the case belongs in federal court. And you said, well, we're entitled to rely on the allegations in the state court complaint. And let's assume for the moment that that means you can rely on the 500 people. They never mentioned $5 million. And 500 people might include some people who have a $250 difference and some people who have... You just kind of pulled $10,000 out of the air because that was a nice, easy mathematical device. But why don't you have the burden of showing, as our jurisdictional amount cases suggest, that you're going to meet the $5 million? Well, I think that your question suggests that... Or that you could meet the $5 million, that it's not clear to a legal certainty that you won't meet the $5 million. Obviously, we know those tests, too. I mean, if we're faced with a complaint that alleges that travelers engages in this conduct many, many, many times, and let's say there was some way that travelers had available to it to find out that, in fact, this was the only time it ever happened. I guess it sounds like your question would suggest that the case could not be adjudicated in federal court. In fact, it is a different situation, which is that... I mean, it's our belief that this doesn't happen. We know of a single incident that it's happening. But it's the plaintiff that alleges that it happens all the time. And we have to assume that that's true for purposes of jurisdiction. So I'm being tedious, but assuming is different from evidence about jurisdictional amount. There's a long line of cases that say, roughly, you can accept the plaintiff's allegation of a jurisdictional amount, which is routine in cases that start out in federal court, and somebody says the jurisdictional amount's greater than $75,000, fine. You can take that. But the minute somebody challenges it, you've got to come forward with evidence, like how many instances are there, and what's the average settlement amount, and how many umbrella policies are out there. You've got to come forward with some evidence that will at least show that it could be this much. So first, the requirement is for the defendant to make a good-faith estimate that's plausible, and that would control, unless it's legally impossible, that the estimate that they come up with could be accurate. So Travelers did submit a declaration, and they looked at this in two possible ways. What we know from the complaint is that this has allegedly happened 500 times. The complaint alleges that each putative class member has damages substantially, whatever that means, substantially above the auto liability limit. I would note that in her appellate brief on page 3, a plaintiff's counsel writes that defendants' wrongful acts have caused damage on a massive scale. So we looked at this two ways. We looked at what are umbrella policy limits. Well, the minimum umbrella policy limits are $1 million. By the way, we also, and the declaration says this, we also have limits of $5 million and $10 million. We only use the lowest. We use the $1 million. And we allege that the damages could be up to $500 million if each person had damages that would max out the limits. Now, if they didn't, we also looked at it. That's very unlikely, though. I mean, I don't know how that happens. Well, we don't think that the conduct at issue here is happening, but just the fact that we don't believe that it's happening doesn't mean we don't get to have a federal court adjudicate the controversy. The point of this is that the controversy needs to be adjudicated by the federal court because the plaintiff claims that this is what's happening. We also looked at it the other end. We looked at what, so we said, okay, we looked at the declaration talks about the lowest auto policy limits, which is $300,000 or $500,000. And we said, even if this substantial damage were only $10,000 each, you'd still come up with $5 million. We note that the plaintiff wound up recovering not $10,000, but $250,000. And this doesn't even account for the fact that the plaintiff has pleaded punitive damages. Do we think you'll ever get punitive damages? Absolutely not. But the law says you take those into consideration for the amount in controversy. And courts have upheld punitive damage, and he has a fraud count in there, and he pleads for punitive damages. There's case law finding that punitive damages awards in single-digit multipliers meet due process. So if you use that and you look at, let's say, substantial damages means only $1,000 above the auto policy limit, you'd still get $5 million. Let's just assume for a moment that you're unsuccessful in convincing us that CAFCA gives us jurisdiction. Make your best case under the RICO allegation. Under the RICO allegation, travelers argued that it doesn't stay the claim. We never said the count was frivolous. And in fact, we said other counts were frivolous, but not the RICO count. Then Judge Chang looked at it, and he didn't say that it was frivolous. I know that, but now it's here. I mean, we may have to just, if we decide the CAFCA thing is a non-starter, we're going to have to look at the RICO. Why does RICO cut it in terms of jurisdiction? Well, I mean, plaintiff contends that he can't. So in other words, how is their enterprise, we'll assume that's travelers, racketeering acts, how do we do this? Well, I guess the predicate, I mean, we argued that they didn't meet predicate acts. I guess they would say that the predicate acts, I mean, and by the way, the plaintiff asked for another chance to plead RICO. Yeah, but let's look at the complaint as it is. Yes. Because we don't know what the acts are. It hasn't been alleged specifically, right? The predicate acts have not been alleged. Right. So that's a huge problem. I mean, what we're driving at, I think, is is there any showing any allegation of substantive harm here in the RICO allegation that would sustain our Article III jurisdiction? Well, substantive harm, I mean, there's no substantive harm on any of the counts. Allegation of is what we need to worry about. The allegation would be that there's a delay in the plaintiff getting money, that the case takes longer to settle if there's some gap between when the proper limits are not disclosed. And to use Justice Powell's words, that sounds very conclusory. Well, I mean, I guess a finder of fact could decide whether or not there really is a delay and what the value of that delay would be. I would think in some circumstances maybe there would be a delay. In other circumstances, there weren't. You could talk about whatever these litigation strategy decisions are. That goes to the fact as to whether you have on the face of the complaint here a viable class action, doesn't it? I mean, you look at this thing and you say, this is never going to cut it under Rule 23. I mean, there's never going to be a federal class action. Well, that's for sure, but that's not the jurisdictional question. But, yeah, we didn't move. Not under RICO, no. Correct, yes. No, no, we're confident this is, whatever form this is in, it's not going to be a class action. You know, the complaint has three pages of RICO allegations. And they were added later on, weren't they? Well, right. So the Plaintiff's Counsel filed these three cases against three insurance companies, and two of the insurance companies are Illinois citizens. Travelers is not, so we removed. And that's when Plaintiff's Counsel had the idea of adding Hitchens and Mazel to non-diverse defendants with the hopes of affecting a local controversy remand. And I'm not going to be able to get into that, but he lost on that. The local controversy exception doesn't apply here, and so he made an appeal. Largely, I take it your position was because those in-state defendants didn't have a substantial enough role? Correct. Even under the standard that's most favorable to Plaintiff's Counsel, which is for the mandatory local controversy exception, when more than two-thirds of the class are citizens of Illinois, there's no significant basis for recovery against them or significant relief sought against the local controversy. So your view is that it's the significance part of that mandatory test that's what you really are using? Yes, that's what we focus on, the significance. And then if you look at the discretionary rule, which would be one between one-third and two-thirds. Right. All right, thank you so much. Mr. Simpson, I'm sure you have something further, although you have about a minute. You're going to have to cram it in. Maybe I'll give you two. I will get as much out as I can, Judge. So, first of all, on the whether or not Mays-Ellen Associates is a significant defendant, the district court said the local defendants may well be more than isolated role players, but we don't know the answer to that. And then he went and denied us discovery to find the answer to that out. I would say this. Mays-Ellen Associates, for years, has only been representing travelers insured, and the probability that they are a significant defendant in this case is very, very high. Secondly, you talked about the fact that RICO was added, and I just want to point out to this court that it was added after this court denied our petition for leave to appeal on the jurisdiction issue. And I interpreted your denial of my petition for leave to appeal on jurisdiction as indicating that you thought Judge Chang got it right on the jurisdiction issue. After you ruled and I made that conclusion, DART came out and suggested that in certain situations, the United States Supreme Court gave us advice that it wanted to encourage the circuits around the country to be more inclined to grant PLAs on jurisdiction under CAFCA. So it's not anybody's fault, but it is a situation that, and defendants even said the only reason they added the RICO count was because the PLA got denied, and I don't disagree with it. It absolutely was true. Also, they said, well, you said, well, how is their jurisdiction in this case about $5 million, amount of controversy, the number of people that's in the class. I would go back to this, and counsel said, well, we don't know the answer to that. The answer to that is in their files, and it's only in their files. The people that are paraplegics that don't know can only know looking at their files, and they should do that. All right, you need to wrap up now. Okay. One wrap-up sentence. Let me try two sentences here. Rieger v. Traveler says that my client became the beneficiary of the policy, the umbrella policy, soon as it happened, and the case law from Terry v. Fitcher from the Illinois Supreme Court back in 1957 said the disclosures of umbrella policies and policy limits is part of the public policy. All right, thank you very much. Thank you. We will take the case under advisement.